# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JSURGICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:18-cv-01022-JSM-JSS |
| ) | |
| SYNERGY HEALTH, PLC, ) | |
| n/k/a STERIS, PLC; and, STERIS ) | |
| CORPORATION, n/k/a STERIS, PLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. 30] AND MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT HEREOF**

Plaintiff, Jsurgical, Inc. ("Jsurgical"), responds in opposition to Defendant's Motion for Attorneys' Fees and Costs. (Dkt.30). In support thereof, Plaintiff states the following:

## INTRODUCTION

Defendants might have prevailed as to whether there is an enforceable arbitration agreement, but they have not prevailed against Jsurgical under the Master Services Agreement. Thus, to the extent Plaintiff is entitled to fees, then those fees can only be obtained under FDUTPA rather than the Master Services Agreement. Should this Court

1

find Defendants are a prevailing party under FDUTPA, then Plaintiff does not dispute Defendants entitlement to the costs of removal incurred for prevailing on the issue of FDUTPA as applied to the arbitration agreement. Plaintiff disputes Defendants entitlement to the total sum claimed.

Also, Plaintiff is concurrently[1] requesting relief pursuant to Federal Rule of Civil Procedure 60(b), from the final order entered on September 21, 2018 (Dkt. 28), and the final judgment entered on October 9, 2018. (Dkt. 29) and said motion is incorporated by reference as if stated more fully herein.

## PROCEDURAL HISTORY

Plaintiff filed a three (3) count *Complaint* in Florida State Court where: Count I sought monetary damages and rescission of an arbitration agreement between Jsurgical with Synergy Health PLC ("Synergy"); Count II sought damages for Synergy's alleged violations of FDUTPA, and Count III sought damages for alleged tortious interference by Steris Corporation. ("Steris"). (Dkt. 2). Jsurgical alleged damages exceeding eighty-three thousand dollars ($83,000.00) and requested the relief of "actual (and, as applicable, consequential) damages," (*Id.* at pp. 9, 11. *Id.* at ¶¶ 32, 56).

Defendants removed the matter for diversity jurisdiction, because "Jsurgical specifically alleges that it has incurred actual and consequential damages related to the

---

[1] Plaintiff is filing this motion just before midnight on November 12, 2018, but the Rule 60(b) motion will be filed within the following hour on November 13, 2018.

conduct alleged in the Complaint in the amount of $83,000, and Jsurgical specifically requests judgment for such actual and consequential damages in the respective requests for relief." (Dkt. 3 at ¶¶7).  Then, Defendants moved to dismiss the Complaint for failing to state a cause of action as to each count.  (Dkt. 11).  This Court granted dismissal of the rescission and tortious interference claims for "fail[ing] on the merits for the reasons stated in Defendants' motion."  (Dkt. 13 at p. 3).  The FDUTPA count was also dismissed, but Plaintiff was given leave to amend the Complaint. *Id.* at p. 6.

Plaintiff requested relief under Rule 6 and Rule 60 of the Federal Rules of Civil Procedure (Dkt. 16) and Defendants' responded in Opposition (Dkt. 18) to same.  While denying Plaintiff's request for relief, the Court found, based upon the face of Plaintiff's Complaint, that subject matter jurisdiction was proper at the time of removal. (Dkt. 19). The Court also granted Plaintiff leave to amend the Amended Complaint. *Id.*

Plaintiff filed its Amended Complaint and Defendants moved to dismiss same for failing to state a cause of action.  (Dkt. 24).  Plaintiff opposed a dismissal (Dkt. 28), but this Court dismissed the Amended Complaint. (Dkt. 28).  The Court gave Plaintiff a "final opportunity to amend its complaint to state a plausible claim." *Id.* at p. 1.  Plaintiff did not file a second amended complaint, so the Court *sua sponte*, ordered the matter dismissed. (Dkt. 29).  Defendants moved this Court for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d), the Master Services Agreement between the

3

parties, and §501.2105, Florida Statutes. (Dkt. 30).

## LEGAL STANDARD

### FDUTPA and Fees

"Once a trial court has determined that a party is a prevailing party under FDUTPA, it then has discretion to award attorney's fees and costs after considering various equitable factors…." *Chow v. Chak Yam Chau*, 640 F. App'x 834, 838 (11th Cir. 2015): Those factors include, but are not limited to, a consideration of whether the claim was filed in bad faith, or alternatively, whether the claim was frivolous even in the absence of subjective bad faith. *Id.* In *HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, No. 6:14-cv-2004-Orl-40KRS, 2018 WL 1863778, at *4 (M.D. Fla. Mar. 26, 2018), the following factors were identified for consideration:

> (1) The scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, or groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

### Duplicative, Excessive, Unnecessary, Improper, and Clerical/Non-Legal Work:

"In calculating what hours were reasonably expended on litigation, the Court should exclude excessive, unnecessary, and redundant hours." *Lumpuy v. Scottsdale Ins.*

*Co,* 2013 WL 4648500, at *2 (citing *Norman v. House. Auth. Of City of Montgomery,* 836 F.2d 1292, at 1301-02). The Court may also exclude hours where "the description of the work performed is overly vague." *Wendel v. USAA Cas. Ins. Co.,* 2009 WL 1971451, at *3 (M.D.Fla. July 8, 2009) (citing *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1318 (M.D. Fla. 2003)). Furthermore, fees are appropriately reduced for "time spent on discrete unsuccessful claims, duplicated efforts, excessive meetings between attorneys, billing for administrative tasks, senior counsel's billing for legal research that could have been assigned to an associate or paralegal, and billing at full rates for non-legal tasks like travel and clerical functions." *St. Fleur v. City of Fort Lauderdale,* 149 F. App'x 849, 853 (11th Cir. 2005) (unpublished).

Block Billing

"One basis for reducing the requested number of hours is the use of block billing, which refers to the practice of including multiple distinct tasks within the same time entry." *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.,* No. 8:09-cv-2465-VMC-TGW, 2012 WL 2226441, at *4 (M.D. Fla. June 15, 2012) (unpublished) (quoting *Bujanowski v. Kocontes,* No. 8:08-cv-390-VMC-EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009) (unpublished)). Generally, "[b]lock billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying

the time spent on each task." *Id.* (quoting *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC,* 476 F. App'x 198, 203 (11th Cir. 2012) (unpublished)). The problem with block billing is that it "results in 'imprecision' in an attorney's records . . . a problem for which the opponent should not be penalized." *Ceres,* 476 F. App'x at 203. To remedy this problem, the Eleventh Circuit, in an unpublished opinion, impliedly approved the use by district courts of across-the-board reductions in block billed hours to offset the ill effects of block billing. *Id.* (citing *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010) (awarding no attorney's fees to block billed entries or significantly reducing the requested attorneys' fees); *Lil' Joe Wein Music, Inc. v. Jackson,* No. 06-20079-CIV, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (unpublished) (applying a twenty percent across-the-board reduction to block billed hours)); *see also, e.g., Hiscox,* 2012 WL 2226441, at *4 (applying a twenty percent across-the-board reduction to block billed hours); *Oravec v. Sunny Isles Luxury Ventures L.C.,* No. 04-22780-CIV, 2010 WL 1302914, at *13 (S.D. Fla. Mar. 31, 2010) (unpublished) (applying a twenty-five percent across-the-board reduction to block billed hours).

## ARGUMENT

I. **DEFENDANTS HAVE NOT PREVAILED UNDER THE MASTER SERVICES AGREEMENT, BECAUSE THE ARBITRATION AGREEMENT THEREIN LIMITED THIS COURTS ABILITY TO DECIDE THE MERITS BEYOND THE SCOPE OF THE ARBITRATION AGREEMENTS ENFORCEABILITY**

6

The Court must reject all of Defendant's arguments attempting to collect fees and costs under the Master Services Agreement, because Defendants have not prevailed on any substantive matter relating to the Agreement. Plaintiff argues the dismissal with prejudice, is limited to a determination of whether the arbitration agreement is enforceable on the merits rather than all causes of action, because the essence of Plaintiff's action challenged the arbitration agreement, rather than the entire contract.

Prior to enforcing any of its rights under the arbitration agreement, Jsurgical sought, by way of the Complaint and the Amended Complaint, to ascertain whether the arbitration agreement was enforceable. See *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir.2005) (analyzing the limitations of district court's with respect to challenges to the arbitration agreement versus the contract as a whole.)

Pursuant to the Federal Arbitration Act, a federal court should order arbitration to proceed if it determined that the making of the arbitration agreement itself or failure to comply with the arbitration agreement was not in issue. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

"The arbitrability of a particular dispute is a threshold issue to be decided by the courts. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("The question whether the parties have submitted a particular

7

dispute to arbitration, i.e., the `question of arbitrability,' is `an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986))); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the . . . agreement does in fact create such a duty.").

In *Nagrampa v. Mailcoups, Inc. The American Arbitration Assoc.*, 469 F.3d 1257 (9th Cir. 2006), similar to Jsurgical, Plaintiff specifically challenged the conscionability of an arbitration provision contained in a franchise agreement and did not set forth any claims against the agreement as a whole. The Ninth Circuit explained, "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA. The federal courts cannot shirk their statutory obligation to do so simply because controlling substantive state law requires the court to consider, in the course of analyzing the validity of the arbitration provision, the circumstances surrounding the making of the entire agreement." See *Nagrampa*, 469 F.3d 1257 at 27 (9th Cir. 2006) (internal citations and footnotes omitted).

In the instant case Jsurgical exclusively set forth claims which directly challenged

8

the arbitration agreement and never asserted challenges against the Master Services Agreement as a whole. Accordingly, Jsurgical argues that the court had a duty to determine the validity of the arbitration agreement before issuing the order of dismissal, which if deemed valid, would relinquish the court of subject matter jurisdiction and require the dispute to be sent to arbitration.

## II. PLAINTIFF COULD NOT HAVE WAIVED ARBITRATION WHEN PLAINTIFF SPECIFICALLY EXCLUDED A CAUSE OF ACTION FOR BREACH OF CONTRACT

Plaintiff cannot be considered to have waived its right to arbitration by pleading causes of action which challenge the unfair and depictive nature of the circumstances surrounding the arbitration agreement, rather than the contract itself. "The Supreme Court has defined waiver as the "intentional relinquishment or abandonment of a known right." Nagrampa at 50, citing, United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (internal quotations omitted). Moreover, before an argument for waiver of the arbitration agreement should be considered the court must first determine its validity irrespective of any claimed waiver on the part of Plaintiff by the Defendants. That threshold decision must be addressed by the court before Jsurgical can be said to have waived its right to participate. Accordingly, Defendants' claims that Plaintiff has waived its right to arbitration are nothing more than frivolous assertions vacant of any meaningful support.

### III. SUBJECT TO THIS MOTION, THIS COURT SHOULD AWARD DEFENDANTS "TAXABLE COSTS"

Without waiving any arguments made in Plaintiff's Rule 60(b) motion, Plaintiff does not dispute Defendants have prevailed under FDUTPA as it relates to the arbitration agreement. Accordingly, Plaintiff does not dispute Defendants entitlement to taxable costs.

### IV. THIS COURT SHOULD NOT AWARD DEFENDANT ALL THE FEES SOUGHT AFTER

A. <u>Defendants are not a prevailing party under the Master Services Agreement, because the issues contemplated by the Master Services Agreement have not been litigated</u>.

As mentioned above, since Plaintiff never placed the Master Services Agreement at issue in this litigation, this Court's jurisdiction was limited to determining the enforceability or unenforceability of the arbitration agreement. To the extent this Court decided merits that were outside the enforceability of the arbitration agreement, it acted outside of its subject matter jurisdiction. See *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 at 94-95 (1998) (requiring jurisdiction be established as a threshold matter, without exception). Thus, Defendants are not entitled to fees and costs under the Master Services Agreement.

B. <u>Under FDUTPA, this Court should utilize its discretion to only allow Defendant to recover taxable costs</u>.

Unlike Defendant suggest, the Court should use its discretion to not grant fees

under *HRCC, Ltd.*, 2018 WL 1863778, at *4 (M.D. Fla. Mar. 26, 2018). The factors needing considering are:

> (1) The scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, or groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Id.*

The scope and history of the litigation favors Plaintiff, because Plaintiff's Counsel has limited litigation to the enforceability of the arbitration agreement, which started in February 2018. (Dkt. 2). Defendants' first timely motion to dismiss was filed on May 25, 2018 and an adjudication regarding the arbitration's enforceability was done within six (6) months. (Dkt. 11). Regardless of Plaintiff's inability to state a cause of action to obtain relief from the arbitration agreement, the issues were narrow as they pertained to enforceability alone.

The ability of the opposing party to satisfy an award of fees also favors Jsurgical and Defendant could not be any more wrong about Jsurgical's financial wherewithal. If ability to pay wasn't an issue, Jsurgical would have already validated another site had it had money to do so. But ability to pay is an issue, which is why the damages sought appeared to go beyond the arbitration limitation. In either event, Jsurgical is prepared to

11

testify as to the unduly burdensome nature the breach of the Master Services Contract created.

If this Court awards fees to the Defendants on this issue, then it will undoubtedly deter others from seeking injunction relief under FDUTPA to invalidate an arbitration agreement. As mentioned, Jsurgical needed to and attempted to seek a remedy invalidating the arbitration agreement, because under same, Jsurgical would never have been brought back to its pre-contract state, since Plaintiff's actual damages are far greater than Synergy's collective aggregate liability on a breach of contract claim. (Dkt. 27 pp. 10 – 11) (citing Dkt. 20-C §4.13).

Factors 4 and 5 also support Plaintiff, even though Plaintiff's Counsel's inexperience resulted in Plaintiff being procedurally and substantively outperformed by Defense Counsel. Specifically, Plaintiff was at all times trying to find an adequate remedy for Jsurgical to obtain damages exceeding those in which it was limited to by the arbitration agreement. (See Dkt. 27 pp. 10 – 11) (citing Dkt. 20-C §4.13). Likewise, Plaintiff's jurisdictional challenges were made in reliance on *Mansfield, C. & L. M. R. Co.* v. *Swan,* 111 U.S. 379 (1884). "In *Mansfield*, the defendants had successfully removed the case to federal court, successfully opposed the plaintiffs' motion to remand the case to state court, lost on the merits of the case, and then reversed course and successfully argued in this Court that the lower federal court had no jurisdiction."

12

*Buckhannon Bd, & Care Home, Inc. V. W, Virginia Dep't. Of Health & Human Res.,* 532 U.S. 598 (2001) (analyzing *Mansfield*).

Likewise, as to factor 6, Plaintiff's Counsel was not trying to stall or frustrate the litigation purpose as Plaintiff was convinced the district court lacked jurisdiction and did not want to expand the resources necessary to proceed in federal court on any issues other than the arbitration provisions enforceability.

As to factor 7, it appears to be on Defendants side, as this Court repeatedly refused to accept Plaintiff's attempt at stating a cause of action. That being said, Plaintiff still believes there was some type of deceptive and unfair trade practice, because the *Combination Offer*, dated February 2015, arguably shows Steris as a direct competitor with Jsurgical. [Dkt. 20-A pp. 98].

C. <u>Prior to February 2018, Defense Counsel provided legal services that were unrelated to the FDUTPA theory</u>.

Prior to awarding Defendants Fees, Defense counsel must admit that a portion of the services were totally unrelated to the FDUTPA claim, namely that Plaintiff's FDUTPA allegations did not exist prior to Plaintiff's Counsel's involvement in this matter. *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 272 (Fla. 1st DCA 1985).

WHEREFORE, Plaintiff, Jsurgical, Inc., respectfully requests that this Court: (a) deny Defendants motion for fees and costs as described herein, b) alternatively, award

Defendant its costs, but deny/limit fees as outlined in this motion, and (c) grant Plaintiff such further relief as is just and proper.

>*/s/ Ramil Kaminsky*
>Ramil A. Kaminsky, Esq.
>FL Bar No.: 105280
>RAK LAW, PLLC
>6735 Conroy Rd., Unit 102-26
>Orlando, FL 32835
>Telephone: (813) 748 – 3373
>Email: ramil@ramilkaminskylaw.com
>Email: rkaminskyusf@gmail.com
>*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following listed counsel:

Michael S. Vitale, Esq.
Robert D. Sowell, Esq.
BAKER & HOSTETLER LLP
200 South Orange Ave
SunTrust Center, Suite 2300
P.O. Box 112
Orlando, FL  32802-0112
Telephone:   (407) 649-4000
Facsimile:   (407) 841-0168
Email:   mvitale@bakerlaw.com
Email:   mrios@bakerlaw.com
Email:   rsowell@bakerlaw.com
Email:   emachin@bakerlaw.com
*Attorneys for Defendants*

>*/s/ Ramil Kaminsky*
>Ramil A. Kaminsky, Esq.